IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT GUBERT, #ML0814 | * | |
| Plaintiff | | |
| v. | * | CIVIL ACTION NO. DKC-09-2892 |
| P.A. NURSE BASHIR | * | |
| OFFICER CO A. BAILEY | | |
| Defendants. | * | |
| | *** | |

**MEMORANDUM OPINION**

I.   Procedural History

Plaintiff filed this civil rights Complaint for damages and miscellaneous relief raising an issue with an October 24, 2009 incident occurring at the Maryland Correctional Adjustment Center ("MCAC").[1] He claims that on that date he received his daily narcotic medication, Ultram, by the following means: Officer Bailey approached Plaintiff, reached into the front pocket of his shirt, handed him a clear plastic bag with two pills inside, and informed him it was his pain medication and that Nurse Bashir had asked him to dispense the medication.[2] ECF No. 1. He asserts that less than 15 minutes later, after eating a snack, he became ill and began to vomit, sweat, experience chest pains, and suffer dizziness. Plaintiff asserts that emergency medical services was contacted and he was taken to a hospital.

---

[1]   According to Plaintiff, he was housed at MCAC by the Internal Investigative Unit ("IIU") for investigation into a gang-related matter. ECF No. 1.

[2]   Plaintiff speculates that Officer Bailey may be affiliated with the Black Gorilla Family gang.

In letter entries Plaintiff accuses Nurse Bashir of medical malpractice and claims that Officer Bailey is not a practicing medication provider and has no authorization to give out a narcotic pain medication to anyone.[3]  ECF Nos. 6 & 9.

Plaintiff has filed a Motion for Summary Judgment; Defendants Bailey and Bashir have filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment; and Plaintiff has filed a number of responses in opposition.[4]  ECF Nos. 33, 34, 36-38, 43, 45, and 47.  The various motions may be determined on the pleadings.  *See* Local Rule 105.6.  (D. Md. 2010).

II.     Standard of Review

Fed. R. Civ. P. 56(c)(2) provides that:

> [Summary judgment] sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

---

[3]     Plaintiff's attachments indicate that he did file a grievance concerning the October 24, 2009 incident and his claim was found to be meritorious.  Disciplinary action was taken against Officer Bailey for giving out the medication. ECF No. 12 at Attachments.

[4]     In addition, Plaintiff has filed a "Motion to Stop Any and All Judgments or Attempts to Any Filings to Motions for Summary Judgment."  ECF No. 48.  The document has been construed as an opposition response and shall be denied as moot for reasons set out in this opinion.

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to...the non-moving, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

III.    Discussion

     Facts

Plaintiff claims that Officer Bailey improperly dispensed the medication to him pursuant to Nurse Bashir's request, should have been more responsible, and should be held accountable. ECF No. 33. He reiterates the factual claims made in his Complaint regarding the distribution of the medication and how he became very ill within 15 minutes after ingesting the medication. Through his attachments he seemingly claims that Bailey violated the officer's code of conduct as he was found to be in possession of a controlled dangerous substance and the contraband (the Ultram medication). He further claims that Bailey failed to perform his duties in a satisfactory manner, caused a breach of security, did not exercise extreme caution to control drugs and dangerous materials, and filed an inaccurate report. ECF No. 33 at Attachments.

Correctional Officer Bailey acknowledges that on October 24, 2009, Nurse Bashir gave him some medication to give to Plaintiff, who was housed in B-Pod cell 34. ECF No. 34. After locking

in another inmate, Bailey went to Plaintiff's cell and gave him the medication. Bailey states that he was disciplined with a level one reprimand as his actions "constituted a violation of performance of duties, breach of security, control of weapons and contraband."[5] *Id*. at Ex. 1, Bailey Decl.

Plaintiff was transported to Mercy Medical Center ("MMC") on October 25, 2009, after complaining of nausea, vomiting and chest pain after eating a sandwich at MCAC. He was examined and treated at the hospital with medications for the treatment of acid reflux, gastroesophageal reflux disease ("GERD"), and constipation. His vital signs, electrocardiogram ("EKG"), and blood tests were all normal. He was discharged and returned to MCAC the same date. *Id*., at Ex. 2. His hypertension medications were modified and three new medications, Protonix, Maalox and Colace, were ordered. Plaintiff was seen at MCAC on the same day and his vital signs were again found to be normal. He was next seen in the dispensary in November 2009, for his complaints of constipation and cold symptoms.

Nurse Bashir affirms that Plaintiff has a history of diabetes mellitus and receives dosages of sliding scale regular insulin based upon his tested blood sugar level. ECF No. 43. Bashir claims that on the evening of October 24, 2009, Plaintiff refused to allow him to check his blood sugar, leaving Bashir unable to determine how much insulin Plaintiff needed. Bashir states that he instructed Plaintiff not to eat because without insulin coverage, he could become hyperglycemic, but Plaintiff disregarded Bashir's instructions and ate a sandwich. Later that evening, Bashir was approached by an officer who indicated that Plaintiff was requesting his pain medication. Bashir acknowledges that as he was attending to three other inmates in the dispensary and was unable to leave at that time, he gave the officer two tablets of Ultram pain medication prescribed for Plainiff and asked the officer to give it to Plaintiff himself. ECF No. 43, Ex. A, Bashir Decl. On October

---

[5] The medication in question was considered contraband.

4

25, 2009, at 1:00 a.m. Bashir was called to Plaintiff's housing unit because he was complaining of vomiting and chest pain. Bashir decided to call 911 in light of these complaints and Plaintiff was transported to MMC. At MCC Plaintiff underwent EKG testing, which showed that Plaintiff's enzymes were normal and there were no acute changes. It was the impression by the MCC physician that GERD was the cause of Plaintiff's pain. Therefore, the medication Protonix and Maalox were prescribed which afforded Plaintiff some relief. He was discharged to MCAC with those additionally prescribed medications. *Id*., Ex. B.

Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment ." *De Lonta v. Angelone,* 330 F.3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Romero must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical

condition. *Farmer,* 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter …becomes essential to proof of deliberate indifference 'because prison officials wholacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center,* 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F.3d 383 (4th Cir. 2001), citing *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998). Allegations of negligence in the distribution of the wrong medication on one occasion are insufficient to state a claim under the Eighth Amendment because negligence is not actionable under 42 U.S.C. § 1983. *See Davidson v. Cannon,* 474 U.S. 344, 347-48 (1986); *Daniels v. Williams,* 474 U.S. 327, 333-34, (1986); *Estelle,* 429 U.S. at 106.

Plaintiff claims that defendants are culpable for providing him the medication in question. He accuses Bashir of medical negligence for giving a "pain narcotic medication" to a person outside of the medical field. Further, Plaintiff argues that Bailey is liable because he was not authorized to possess or dispense the medication. There is no genuine dispute of material fact that Nurse Bashir gave Officer Bailey the Ultram medication with the instruction to give it to Plaintiff. While this action may have been irresponsible, arguably negligent, and a violation of the code of conduct for correctional officers, it does not rise to the level of deliberate indifference under the Eighth Amendment. Further, while Plaintiff was sent to a local hospital, there is nothing in the record to

indicate that his symptoms were related to his medication regimen.  Plaintiff has failed to show that prison personnel were otherwise deliberately indifferent to his medical needs.

IV.     Conclusion

For the aforementioned reasons, judgment will be granted in favor of Defendants and against Plaintiff.  A separate Order follows.


Date:   December 16, 2010                        /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge